UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MT ENTERPRISES LLC | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. |
| | : | |
| THUNDERSHIRT, LLC d/b/a | : | |
| THUNDERWORKS | : | |
|     Defendant | : | |

## COMPLAINT

Plaintiff, MT Enterprises LLC, successor in interest to Ronald J. Louro (collectively, "MT Enterprises") brings this action against Defendant, Thundershirt, LLC d/b/a ThunderWorks ("ThunderWorks"), for breach of contract; unjust enrichment; a permanent injunction and infringement of trademark. MT Enterprises seeks entry of judgment in its favor, compensatory damages, equitable relief, interest, attorneys' fees and costs of suit.

## PARTIES

1. MT Enterprises is a Rhode Island corporation with a principal place of business in Warren, Rhode Island.

2. ThunderWorks is a Delaware corporation with a principal place of business in Durham, North Carolina.

3. Upon information and belief, "Thundershirt" is a brand name for products marketed and sold by ThunderWorks.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

5. Defendant is properly subject to personal jurisdiction, and additionally affirmatively submitted to jurisdiction in a contract with Plaintiff.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

# FACTS

7. Ronald J. Louro ("Mr. Louro") is the principal and founder of MT Enterprises.

8. In or about January 11, 2011, Mr. Louro of MT Enterprises invented and developed a unique non-pull pet harness called "Pull-eze" (formerly known as "Easy Leader") (hereinafter referred to as the "Product").

9. John Cullen ("Mr. Cullen") of BullDogs Marketing introduced MT Enterprises and ThunderWorks, based upon his belief that ThunderWorks would have a strong interest in manufacturing and selling the Product under license from MT Enterprises.  Upon information and belief, Cullen believed the Product might be complimentary to ThunderWork's primary product, the "ThunderShirt," which is a shirt-type product utilized by dog owners for their dogs.

10. In or about 2012, MT Enterprises engaged in extensive discussions with ThunderWorks and, specifically, Ben Feldman ("Mr. Feldman"), an authorized agent of ThunderWorks.

11. The extensive discussions between MT Enterprises and ThunderWorks related to a potential business relationship wherein ThunderWorks would produce, market and sell the Product under license from MT Enterprises.

12. The extensive discussions between MT Enterprises and ThunderWorks resulted in the exchange of, among other documents, a draft "Prospective Licensee Business Proposal Form," a draft "License Agreement" and a proposed licensing fee structure.

13. Discussions between MT Enterprises and ThunderWorks were conducted subject to the provisions of a Mutual Nondisclosure Agreement, executed by the parties on July 6, 2012,

and signed by Christopher Cashin ("Mr. Cashin") on behalf of ThunderWorks, a copy of which is attached hereto as <u>Exhibit A</u> (the "Non-Disclosure Agreement").

16. The Non-Disclosure Agreement provides that it was entered into "in order to assess a possible business transaction (the "Transaction")."  *See* Introductory Paragraph.

15. The Non-Disclosure Agreement provides that ThunderWorks was not to "disclose, duplicate, copy, transmit or otherwise disseminate in any manner whatsoever" the confidential information exchanged between the parties as part of the negotiations.  *See* Paragraph 2(i).

16. The Non-Disclosure Agreement further provided that ThunderWorks would not use the confidential information provided by MT Enterprises "(a) for its own benefit or that of any third party; (b) to [MT Enterprises'] detriment; or (c) in any manner other than to perform the Transaction."  *See* Paragraph 3.

17. The Non-Disclosure Agreement additionally provided that ThunderWorks represented and warranted that ThunderWorks had not, *and would not*, enter into any agreements, or engage in any activities, that would or might interfere or conflict with the terms of the Non-Disclosure Agreement.  *See* Paragraph 6.

18. Moreover, the Non-Disclosure Agreement provided that ThunderWorks and MT Enterprises agreed that the conditions of the Non-Disclosure Agreement, and the confidential information disclosed pursuant to the Agreement, were "of a special, unique, and extraordinary character" and that MT Enterprises "would be irreparably harmed by any disclosure" in violation of the Non-Disclosure Agreement.  *See* Non-Disclosure Agreement at Paragraph 10.  Further, ThunderWorks and MT Enterprises agreed that the use of the confidential information for the business purposes of ThunderWorks, other than in connection with the Transaction, would

enable ThunderWorks to compete unfairly with MT Enterprises. *See id.* For these reasons, ThunderWorks expressly waived any claim or defense that MT Enterprises has an adequate remedy at law, and agreed that MT Enterprises would be entitled to seek equitable relief to prevent further use and/or disclosure, in addition to all other remedies available to MT Enterprises, at law or in equity, for breach of the Non-Disclosure Agreement. *See id.*

19. As part of the negotiations between ThunderWorks and MT Enterprises, MT Enterprises' proprietary product design was disclosed to ThunderWorks.

20. Mr. Cullen was an independent third-party witness to the discussions between ThuunderWorks and MT Enterprises, and was aware that detailed information about MT Enterprises' proprietary product design was disclosed to ThunderWorks.

21. On May 25, 2012, ThunderWorks abruptly withdrew from the negotiations regarding the terms of the proposed license agreement.

22. Upon information and belief, approximately three (3) months thereafter, ThunderWorks publicly announced the "ThunderLeash" product at an industry trade show called the Global Pet Show in Las Vegas, Nevada.

23. It is clear, from the similarities in design between the Product and the "Thunderleash" that, in disregard of the Non-Disclosure Agreement, ThunderWorks studied and utilized MT Enterprises' design and produced a similar product.

24. ThunderWorks also misappropriated MT Enterprises' existing slogan for the Product: "No Pull Harness & Leash in One."

25. On or about May 15, 2014, MT Enterprises' attorney sent a cease and desist letter to ThunderWorks, which also offered, in the alternative, terms for a non-exclusive license, as

was contemplated in the discussions between the parties, for the continued use of the design, as well as a demand for compensation for the revenue generated to that date.

26.     On or about May 23, 2014, ThunderWorks' counsel responded that he was reviewing the matter.  To date, MT Enterprises has received no further response from ThunderWorks.

27.     By breaching the Non-Disclosure Agreement, and developing and marketing the "Thunderleash," ThunderWorks has specifically benefited itself and caused MT Enterprises damages.

## COUNT I

**(Breach of Contract)**

28.     MT Enterprises repeats and incorporates herein by reference the allegations of paragraphs 1 through 27 of this complaint.

29.     ThunderWorks agreed in the Non-Disclosure Agreement that it was not to "duplicate" or "copy" "in any manner whatsoever" the confidential information provided by MT Enterprises.

30.     Further, ThunderWorks agreed it was not to use MT Enterprises' confidential information for its own benefit, or to MT Enterprises' detriment, or in any manner other than to perform the Transaction between the parties.

31.     Additionally, ThunderWorks warranted that it had not, nor would it, engage in any activities that would or might interfere or conflict with the terms of the Non-Disclosure Agreement.

32.     Finally, ThunderWorks agreed that the information disclosed pursuant to the Non-Disclosure Agreement was of a "special, unique, and extraordinary character," that MT

Enterprises would be irreparably harmed by any disclosure or use of said information, and that the use of the information for the business purposes of ThunderWorks, other than in connection with the Transaction, would enable ThunderWorks to compete unfairly with MT Enterprises.

33. ThunderWorks' actions in developing and marketing the Product as a ThunderWorks product, and utilizing MT Enterprises' slogan for the Product, verbatim, constitutes a willful breach of the terms of the contract between the parties.

34. As a result of ThunderWorks' breach of the contract between the parties, MT Enterprises has been damaged.

WHEREFORE, Plaintiff MT Enterprises LLC demands that judgment enter in its favor and that it be awarded compensatory damages, interest, and attorney's fees and costs.

## **COUNT II**

### **(Unjust Enrichment)**

35. MT Enterprises repeats and incorporates herein by reference the allegations of paragraphs 1 through 34 of this complaint.

36. MT Enterprises provided proprietary information of value to ThunderWorks.

37. ThunderWorks acknowledged, accepted, and benefited from the information MT Enterprises provided.

38. It would be inequitable for ThunderWorks to enjoy the benefit of the proprietary information MT Enterprises provided to it without paying value for it.

WHEREFORE, Plaintiff demands that judgment enter in its favor and that it be awarded compensatory damages, interest, and attorney's fees and costs.

## COUNT III

### (Permanent Injunction)

39. Plaintiff repeats and incorporates herein by reference the allegations of paragraphs 1 through 38 of this complaint.

40. MT Enterprises has suffered, and continues to suffer, an irreparable injury as a result of ThunderWorks' actions.

41. Remedies available at law are inadequate to entirely compensate for MT Enterprises' injury.

42. ThunderWorks waived any defense that MT Enterprises has an adequate remedy at law in Section 10 of the Non-Disclosure Agreement.

43. Considering the balance of hardships, a remedy in equity is warranted.

44. The public interest would not be disserved by a permanent injunction.

WHEREAS, MT Enterprises requests the Court to enter a permanent injunction enjoining Thundershirt from manufacturing and producing a product whose design was provided to it pursuant to a Non-Disclosure Agreement, and to mandate that Thundershirt provide an accounting of all profits made by it on "Thunderleash," and to pay to MT Enterprises the wrongfully devired profits.

## COUNT IV

### (Infringement of Federal Trademark Registration/Application No. 86,420,598, In Violation of 15 USC § 1114)

45. MT Enterprises repeats and incorporates herein by reference the allegations of paragraphs 1 through 44 of this Complaint.

46. Plaintiff MT Enterprises is the owner of common-law Trademark rights in and to "The No Pull Harness & Leash in One" (the "Mark"), to which the claimed rights are further

evidenced by United States Trademark Registration /Serial Number 86,420,598, filed October 10, 2014, for the Mark (for Animal harnesses for dogs; Animal leashes; Dog leashes; Leashes for animals; Pet products, namely, pet restraining devices consisting of leashes, collars, harnesses, restraining straps, and leashes with locking devices in Class 018). This application is now valid, subsisting, uncancelled, and unrevoked.

47. Continuously since on or about January 1, 2012, Plaintiff has used the Mark in connection with and to identify its animal harness products and to distinguish said products from similar services offered by other companies, by, and without limitation, prominently displaying said mark on its Internet website, business cards, invoices, email signature blocks and advertising and promotional materials. Plaintiff's products sold using the Mark, together with the Plaintiff's brand name are provided nationwide including in the State of Rhode Island.

48. In addition, as of the date of the filing of this complaint, Plaintiff is actively engaged in expanding its use of the Mark in connection with the marketing of sales in interstate commerce throughout the United States including in the State of Rhode Island.

49. Defendant has infringed Plaintiff's Mark in interstate commerce by various acts, including, without limitation, the selling, offering for sale, promotion and advertising of a product or products virtually identical to the Plaintiff's product(s), using the infringing Mark, and prominently displaying the Mark on the Defendant's web site.

50. Defendants' unauthorized use in commerce of the Mark as described herein is likely to cause confusion, mistake or deception and constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

51. Defendant's use of the Mark in connection with the sale of product(s) virtually identical to the Plaintiff's product(s), has been made notwithstanding Plaintiff's well-known and prior established rights in the Mark, and with constructive notice of Plaintiff's use of said Mark.

52. Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the Mark and with the willful intent to cause confusion in the marketplace and to trade on the Plaintiff's goodwill.

53. Defendants' infringing activities are causing and, unless enjoined by this Court, will continue to cause, immediate and irreparable injury and other damage to Plaintiff's business, reputation and good will in its trademark rights, and will confuse the public, unless permanently enjoined by this court. Plaintiff has no adequate remedy at law.

54. Plaintiff is entitled to injunctive relief under Section 34 of the Lanham Act (15 U.S.C. § 1116).

55. Plaintiff has been required to hire an attorney in this matter to which it is obligated to pay a reasonable fee.

56. Defendants' infringing conduct is malicious, deliberate, fraudulent, and willful, justifying an award of an amount above actual damages and above actual profits and attorneys' fees.

57. Plaintiff is entitled to, among other relief, an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs of the action under Section 35 of the Lanham Act (15 U.S.C. § 1117), together with prejudgment and post-judgment interest.

## JURY TRIAL

Plaintiff demands a trial by jury.

        MT Enterprises LLC

        By its Attorneys,

        /s/ William P. Devereaux
        William P. Devereaux (#2241)
        Sally P. McDonald (#8265)
        PANNONE LOPES DEVEREAUX & WEST LLC
        317 Iron Horse Way, Suite 301
        Providence, RI  02908
        (401) 824-5100
        (401) 824-5123 (fax)

Dated:  November 3, 2014